IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERIC THOMAS BEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACT. NO.  2:05cv605-MHT |
| | )                 [WO] |
| LARRY LIGON, *et al*, | ) |
| | ) |
|     Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff who is in the custody of the Alabama Department of Corrections is incarcerated at the Bullock County Correctional Facility. In this 42 U.S.C. § 1983 action, he seeks relief for various alleged constitutional violations committed against him by three defendants, all of whom are correctional officers. In response to the orders of the court, the defendants filed a special report and answer. The court then informed the plaintiff that the defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment. The plaintiff has filed his response, and this case is now before the court for consideration of the defendants' motion for summary judgment which the court concludes is due to be granted.

During the time Bey was working in the prison laundry, defendant Ligon issued Bey a behavior citation for failure to follow institution rules and regulations which prohibit an inmate removing laundry from the laundry area. The citation described the violation as follows:

> You, inmate Eric Thomas b/m 137013, were stopped by Sgt Ligon preparing to push a laundry cart out of the laundry with 5-laundry bags in it. Inside the

>laundry bags were 7-extra sheets, 2-extra shirts, 3-extra pair of pants, 1-blanket and 4-white towels sewn together to form a blanket.

Both the shift supervisor and the warden approved the citation and Bey lost his telephone, canteen and visiting privileges for 45 days. Bey contends that the actions of the defendants violated his constitutional rights because the charges against him were false and the defendants knowingly charged him with these false charges.

Bey is not entitled to relief. First, the issuance of the citation and the resulting imposition of the loss of privileges do not implicate Bey's Due Process rights even in the absence of a hearing. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court specifically rejected the contention that any punitive measures imposed on a prisoner encroach upon a liberty interest protected under the Due Process Clause. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.,* at 485. A prisoner, who has already been deprived of liberty, can be deprived further of his liberty, such that due process is required, when (1) a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, or (2) when the government has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999). The sanctions imposed on Bey in relation to the ordinary incidents of prison life are neither atypical nor significant. Thus, the actions of

the defendants did not violate his Due Process rights.[1]

Bey further claims that the defendants violated his rights by imposing sanctions on him based on information which they knew was false. This claim also fails. In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court considered a pro se inmate's complaint alleging that he was deprived of due process because erroneous information in his prison file was used to deny him fair consideration for parole and minimum custody status. Monroe alleged that presentence report information indicating he had raped the victim of his crime was false. The defendants admitted the presentence information was false. Acknowledging that he had no liberty interest in parole, Monroe claimed a due process right to be fairly considered for parole. He contended that the defendants' reliance on admittedly false information in order to deny him parole or minimum security classification violated due process.

The *Monroe* court held that the defendants' reliance on *admittedly* false information to deny Monroe consideration for parole was arbitrary and capricious treatment violative of the constitution. However, the *Monroe* court was careful to distinguish its holding from its prior decision in *Slocum v. Ga. State Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, supra. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held

---

[1] Bey was also fired from his job in the laundry. This action likewise does not implicate his protected rights. *Adams v. James*, 784 F.2d 1077 (11th Cir. 1986) (Inmates have no protectible right in keeping a certain job)

>  in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442.

*Slocum* controls the disposition of the instant case. The defendants do not admit that the charge against Bey is false. The plaintiff's contention that the report is false without evidence of its falsity is insufficient.[2] *See Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) (While use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim).

In his response to the defendants' motion for summary judgment, Bey states in an affidavit that two inmate witnesses who knew the truth "became afraid to give affidavits." Bey further claims that these two inmates would have confirmed his contention that the clothes in

---

[2] Summary judgment is not precluded merely because the inmate disputes the validity of the information. In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Court stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interest . . . broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking," . . . and . . . to hold . . . that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." 459 U.S. at 467. Requiring a trial or hearing every time a prisoner asserted that false information was the basis of prison official's decisions would involve the court in review of a multitude of decisions which traditionally are within the province of prison authorities.

the laundry cart did not belong to Bey or that the cart was not assigned to Bey.[3] Bey's arguments about the "truth" of the matter are quite immaterial, and his claims about false information are red herrings. Bey was not charged with taking another inmate's laundry. The infraction he committed was removal of laundry from the laundry area. The ownership of the laundry or whether the cart was assigned to him, whether disputed or not, has no bearing on the truth or falsity of the charges. As reflected in his affidavit, Officer Ligon personally observed Bey committing the infraction.

> On May 17, 2005, at approximately 8:30 p.m., when I, Sgt. Larry Ligon, opened the door to the laundry room, inmate Eric Thomas, B/137013, was standing and leaning against the laundry cart. As I opened the door completely, he turned around and began to push the laundry cart toward the opened door. I stopped the cart by placing my hand on the cart's rail. I then looked inside the cart and saw several laundry bags filled with laundry items.
>
> On the date this incident occurred, inmate Thomas' job assignment was working in the laundry at Bullock County Correctional Facility. Inmates who work in the laundry have been told on several occasions, and made aware of, the consequences of removing laundry items from the laundry by any means.

Since it is undisputed that the defendants did not rely on *admittedly* false information in lodging the specific charge against him, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be granted and that this case be dismissed with prejudice. It is further

ORDERED that the parties are DIRECTED to file any objections to the said

---

[3] The court phrases this in the alternative because Bey's arguments seem to include assertions about whether the laundry cart was assigned to him as well as whether the laundry was his.

Recommendation **on or before August 1, 2007.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of July, 2007.

                                        /s/Charles S. Coody
                                        CHARLES S. COODY
                                        CHIEF UNITED STATES MAGISTRATE JUDGE